MR. JUSTICE CASTLES
delivered the opinion of the Court.
This is an action by the Montana Wilderness Association and the Gallatin Sportsmen’s Association, Inc., for declaratory and injunctive relief against a proposed subdivision development in Gallatin County known as Beaver Creek South. The district *479 court of Lewis and Clark County entered summary judgment (1) that the environmental impact statement on the proposed subdivision was void, (2) ordering reinstatement of the prior sanitary restrictions on the proposed subdivision, and (3) enjoining further development of the proposed subdivision until the reimposed sanitary restrictions are legally removed. One of the defendants and intervenor, appeal.
The instant appeal is on rehearing and the opinion previously promulgated on July 22, 1976, is withdrawn.
Plaintiffs in the district court were the Montana Wilderness Association, a Montana nonprofit corporation dedicated to the promotion of wilderness areas and aiding environmental causes generally, and Gallatin Sportmen’s Association, Inc., a Montana nonprofit corporation organized for charitable, educational and scientific purposes including the conservation of wildlife, wildlife habitat and other natural resources.
Defendants are (1) the Board of Health and Environmental Sciences and, (2) the Department of Health and Environmental Sciences of the State of Montana. Intervenor Beaver Creek South, Inc. is a Montana corporation and the developer of the proposed subdivision and has been made a party to the judgment. The Montana Environmental Quality Council, a statutory state agency, appeared in the district court as amicus curiae. The Montana Department of Community Affairs appears as amicus curiae. Other amicus curiae appeared by brief.
Beaver Creek South owns a tract of approximately 160 acres adjacent to U.S. Highway 191 in the Gallatin Valley seven miles south of Big Sky of Montana. Early in 1973 Beaver Creek submitted to the Bozeman City-County Planning Board a subdivision plat for approval by that board and the Gallatin County Commissioners, contemplating development of 95 acres of that tract as a planned unit development in two phases. This submission and approval was required by sections 11-3859 through 11-3876, R.C.M.1947, known as the Montana Subdivision and Platting Act. After publication of notice a public hearing was held *480 on October 11, 1973 where the only public reaction was from the State Department of Fish and Game, expressing concern about possible infringement of wildlife habitat along the highway. Again, on January 10, 1974, a second public hearing was held after notice concerning a second phase of the development was given. At this second hearing, no public comments were received. Approval of the subdivision was recommended and carried out, subject to approval of water and sewer systems by the Montana Department of Health and Environmental Sciences as required by sections 69-4801 through 69-4827, R.C.M.1947. The application for this approval had been made by the owner early in 1973 also. At the local level, neither plaintiff appeared at the public hearings.
After several months of conferences and tests the Department issued a draft environmental impact statement on April 8, 1974. The draft statement was issued purportedly because of the requirements of section 69-6504(b)(3), R.C.M.1947, the Montana Environmental Policy Act (MEPA). A final impact statement was issued on June 26, 1974.
On July 26, 1974, the Department issued and delivered to Beaver Creek its certificate removing the sanitary restrictions on the plat.
On that same day, July 26, 1974, after the issuance of the certificate, the Department was served with an order to show cause and a temporary restraining order issued on the basis of this action filed by plaintiffs on July 25, 1974.
Even though it had already lifted the sanitary restrictions before service of the temporary restraining order, the Department chose on July 29, 1974 to rescind and invalidate its earlier certificate. Following this a series of procedural matters were had and the Department undertook to revise its Environmental Impact statement. At this point, the landowner, Beaver Creek, was not a party to the proceedings. It was allowed to intervene in September, 1974. The Gallatin County Board of County Commissioners was never a party to the action.
*481 Motions to dismiss and briefs were filed, and on February 11, 1975, the district court ordered the temporary restraining order be dissolved, and the Associations be given an opportunity to file an amended complaint seeking a declaratory jdugment on any impact statement other than the one filed in June 1974. In its memorandum and order, the district court found the Associations had standing to sue a state agency, but the Department must be given an opportunity to exercise its discretion and that an injunction would lie “only after the Department has acted unlawfully”.
On February 14, 1975 the Department again conditionally removed the sanitary restrictions on Beaver Creek South.
On February 21, 1975, plaintiffs filed their second amended complaint seeking: (1) declaratory judgment that the Revised EIS of the Department was inadequate in law; (2) a permanent injunction prohibiting Beaver Creek from selling any of the lots of further developing Beaver Creek South until compliance with the laws of Montana was effected; and (3) a mandatory injunction ordering the Department to reimpose sanitary restrictions on Beaver Creek South.
The focus of the second amended complaint is that the Revised EIS does not comply with legal requirements of MEPA in these particulars:
(1) The Revised EIS does not disclose that the Department used to the fullest extent possible a systematic, interdisciplinary approach as required by section 69-6504(b)(l), R.C.M.1947.
(2) The Revised EIS does not include a detailed statement of alternatives to the proposed action nor were such alternatives studied, developed or described to the fullest extent possible as required by section 69-6504(b)(3)(iii) and 69-6504(b)(4), R.C.M. 1947.
(3) The Revised EIS does not contain a detailed statement of the relationship between local short-term uses of man’s environment and the maintenance and enhancement of long-term productivity as required by section 69-6504(b)(3)(iv), R.C.M.1947.
*482 (4) The Revised EIS does not include to the fullest extent possible a detailed statement of the environmental impact of the proposed subdivision as required by section 69-6504(b)(3)(i), R.C.M.1947.
(5) The Revised EIS contains no adequate consideration of the full range of the economic and environmental costs and benefits of the alternative actions available.
Defendants and intervenor filed motions to dismiss the second amended complaint. This complaint was further amended; the Environmental Quality Council was granted leave to file a brief as amicus curiae; briefs were filed by all parties; and the matter was submitted to the district court for decision.
The district court considered the motions to dismiss as motions for summary judgment under Rule 12(b)(6), M.R.Civ.P. and considered matters outside the pleadings, principally interrogatories and answers.
On August 29, 1975, the district court issued its opinion and declaratory judgment. In substance the district court held the plaintiffs have standing to prosecute this action, that the Revised EIS does not meet statutory requirements in various particulars, and plaintiffs are entitled to injunctive relief. Judgment was entered accordingly.
Defendant Department of Health and Environmental Sciences and intervenor Beaver Creek South, Inc. appeal from the judgment.
The single determinative issue here is the function of the Department in land use decisions such as is involved in this case; that is, a simple subdivision plat. Other ancillary issues as to “standing” of the plaintiff associations to sue and the right to injunctive relief have been briefed and argued but need not be determined here because of our view of the law of Montana. It is seen that the district court findings and judgment are premised on the MEPA being the ruling statute; and that the Department of Health is required to file an impact statement; and, further, that the Department has the final land use decision over and *483 above the water supply, sewage and solid waste disposal issues. Although the district court did not specifically discuss this problem, it can be the only basis for its decision.
In analyzing the law of Montana, three acts of the Montana legislature are involved. The three acts which must be looked to and harmonized are:
(1) The 1967 Subdivision Sanitation Act, sections 69-5001 through 5009, R.C.M.1947.
This Act prohibits the recording of any subdivision plat until the Department issues its certificate removing sanitary restrictions from the plat. It is primarily a public health measure and is designed to protect the quality and potability of public water supplies.
(2) The 1971 Montana Environmental Policy Act, sections 69-6501 through 6518, R.C.M.1947. This Act declares as its purpose in section 69-6502:
“The purpose of this act is to declare a state policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent' or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources important to the state; and to establish an environmental quality council.”
The MEPA then goes on to describe in general terms the environmental impacts that must be assessed when agencies of the state make major decisions having a significant impact on the human environment. Section 69-6504 requires state agencies to prepare detailed statements analyzing the impacts of major actions of state government in several categories. In that same section the “responsible state official” shall consult with other state agencies, and, in subdivision (6) provides that state agencies shall:
“make available to counties, municipalities, institutions, and individuals, advice and information useful in restoring, maintaining, and enhancing the quality of the environment”.
*484 The MEPA also created a legislative branch entity known as the Environmental Quality Council. This group has been vested with legislative watchdog authority as a sort of legislative auditor within the legislative branch of government. This Act was amended in 1975 so that all voting members of the council are legislative members. The original Act was passed prior to the effective date of the 1972 Montána Constitution.
(3) The 1973 Subdivision and Platting Act, sections 11-3859 through 11-3876, R.C.M.1947. This Act confers upon local governing bodies the authority to approve or disapprove a subdivision based on a variety of environmental, economic and social factors (section 11-3863). That section, 11-3863, describes the content of the regulations that must be adopted by every local governing body to insure the “* * * orderly development of their jurisdictional areas * * *.” The factors that must be considered include the impact on roads, the need for additional roadways and utility easements, adequate open spaces, water, drainage, sanitation facilities and others, including environmental factors. Also in that section it is provided that the state department of intergovernmental relations shall prescribe reasonable minimum requirements for the local governmental units’ regulations which shall include “detailed criteria for the content of the environmental assessment required by the act.” Public hearings are required and the local governing body “shall consider all relevant evidence relating to the public health, safety and welfare, including the environmental assessment * *
It is also noted that section 69-5001 of the 1967 Subdivision Sanitation Act (also amended in 1973) limited expressly the involvement of the Department to “water supply, sewage disposal, and solid waste disposal”.
Further analysis of the 1973 Subdivision and Platting Act will demonstrate unequivocally a legislative intent to place control of subdivision development in local governmental units in accordance with a comprehensive set of social, economic, and *485 environmental criteria and in compliance with detailed procedural requirements.
Significantly, no similar mandate is given in the 1971 MEPA. Thus we conclude that the district court’s reasoning, necessarily implied from its holding, that MEPA extends the Department’s control over subdivisions beyond matters of water supply, sewage and solid waste disposal is in error as it is in direct conflict with the legislature’s undeniable policy of local control as expressed in the Subdivision and Platting Act.
A further comparison of the local control versus State control over subdivisions is this — the 1973 legislature charged local governing bodies with comprehensive control over subdivision development, and amended that law in 1974 and 1975. If the 1971 MEPA already lodged this control in the state Department, such legislation was superfluous. Also, the express purpose of MEPA set out previously herein states to “encourage”, “promote” and “enrich” [understanding]. Nowhere in the MEPA is found any regulatory language.
 We refer back to the procedures here. The local governing unit, the Gallatin County Commission, had already complied with the laws. It was not made a party to this action. It had a statutory duty and right to act. The MEPA does not change the law with regard to that. Accordingly the judgment directed to the Department’s failure to adequately write an environmental impact statement has nothing to do with the authority of the county commission to act. As to the Department, it of course, can supplement information available to local governing bodies, but its only regulatory function is in the statutorily prescribed areas of water supply, sewage and solid waste disposal.
We have not herein set out the function of the Montana Department of Community Affairs which has submitted a brief amicus curiae. But we do observe that detailed procedures for intergovernmental functions are set out by statutes, regulations, and procedures for protection of the environment.
*486 Finding, as we have, that the regulatory function of subdivisions is local, the judgment and injunctive order of the district court is reversed and the complaint ordered dismissed.
MR. JUSTICE JOHN C. HARRISON and A. B. MARTIN, District Judge, sitting for Chief Justice James T. Harrison, concur.